UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

    Thomas A. Napolitano and
    Mary Napolitano,

               Debtors.

---------------------------------------------------------x

Case No.: 07-73361-478

Chapter 7

# MEMORANDUM DECISION AND ORDER

Appearances:

Gladstein & Messinger
By: Jack Gladstein, Esq.
*Attorneys for the Debtors*
118-21 Queens Boulevard
Suite 614
Forest Hills, New York 11375


Meltzer, Lippe, Goldstein & Breitstone, LLP
By: Kamini Fox, Esq.
*Attorneys for the Chapter 7 Trustee*
190 Willis Avenue
Mineola, New York 11501


Honorable Dorothy Eisenberg, United States Bankruptcy Judge

The issue before the Court is whether the Court should approve a signed stipulation between the Debtors and Neil H. Ackerman, Esq., the Chapter 7 Trustee, under which the Trustee agrees to accept 88% of the cash surrender value of the Debtors' life insurance policies for the benefit of the bankruptcy estate when subsequent to the signing but prior to the hearing on the Trustee's application to approve the stipulation, there was a change in law regarding whether such insurance policies are property of the debtors' bankruptcy estate.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), § 157(b)(2)(B), § 157(b)(2)(E), and § 157(b)(2)(O) and 11 U.S.C. § 541 and § 542. Based upon the facts and law in this case, the Trustee's application is granted and the Debtors' objection is overruled. The following constitutes the Court's finding of fact and conclusions of law as mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTS

The Debtors filed for Chapter 7 relief on August 28, 2007. The Debtors listed in their originally filed Chapter 7 schedules that Mr. Napolitano owns 3 life insurance policies and Mrs. Napolitano owns one life insurance policy (the "Insurance Policies") as to which the total cash surrender value was approximately $119,000. The Debtors claimed the cash surrender value as exempt in their original Schedule C. Each spouse is the beneficiary of the other spouse's policy. The Trustee demanded the turnover of the cash surrender value of the Insurance Policies on the basis that the cash surrender value was not exempt in a joint case where one of the debtors is the beneficiary. *In re Ventimiglia*, 362 B.R. 71, 87 (Bankr. E.D.N.Y. 2007); *In re Teufel*, No. 02-CV-81S, slip op. (W.D.N.Y. Sept. 24, 2002); *In re Jacobs*, 264 B.R. 274 (Bankr. W.D.N.Y.

1

2001); cf., *In re McWhorter*, 312 B.R. 695 (Bankr. N.D. Ala. 2004)(relying on New York law to interpret Alabama statute with similar language).

In order to avoid time-consuming, expensive and unnecessary litigation, the Debtors and the Trustee entered into a stipulation on September 28, 2007 whereby the Debtors agreed to abandon and waive their claimed exemption in the Insurance Policies (the "First Stipulation"). The Court so ordered the First Stipulation on October 3, 2007.

Subsequent to the entry of the First Stipulation, the Debtors notified the Trustee that Prudential Insurance Company of America (the "Insurance Company"), the company which issued the Insurance Policies, has advised them that if the Debtors cancel the Insurance Policies, they will have to pay capital gains taxes on the sum of $82,914.70 in the form of surrender charges such that the actual amount that they will be able to turn over to the Trustee of the cash surrender value shall be significantly less. In addition, if the Debtors take the entire cash surrender value of the Insurance Policies, they will lose the Insurance Policies and it will probably be far more costly for them to purchase similar life insurance at this time, given that the Debtors are older and have different health conditions than when they first applied for the Insurance Policies. Alternatively, the Debtors may borrow up to $60,843.38 (approximately 88% of the cash surrender value) and maintain the Insurance Policies in effect.

As a result, in September of 2008, the Trustee and Debtors executed a new agreement, subject to this Court's authorization and approval, providing that (a) the Debtors' Schedule C is amended to delete any claim of exemption in the cash surrender value; (b) the Debtors may preserve the Insurance Policies but shall immediately make the request for the loan against their Insurance Policies and that they shall turn over the $60,843.38 upon their receipt of same from

the Insurance Company; and (c) that the Debtors shall have no other or further claim to these monies, and they shall repay the loan upon such terms and in such time as they agree to with the Insurance Company. On September 18, 2008, the Trustee filed a motion (the "Motion") seeking the Court's approval of this second stipulation (the "Second Stipulation"). As of the date of the hearing on the Trustee's Motion, the Debtors have already turned over the $60,843.38 to the Trustee by checks from the Insurance Company, and these monies are being held in the Trustee's interest bearing account for this estate.

The Debtors filed an objection to the Motion on October 6, 2008 on the basis that after the parties entered into the Second Stipulation, the Court of Appeals for the Second Circuit held in *Wornick v. Gaffney*, Slip Op. No. 07-1657-bk, 2008 WL 4349810 (2d Cir. September 24, 2008) that where a debtor purchases an insurance policy on his own life for the benefit of his joint debtor spouse, the joint debtor spouse's interest in the policy as a beneficiary is not only protected from the debtor's creditors but is also protected from her own creditors because as the beneficiary, she only has an inchoate interest in the insurance policy. The fact that the debtors are spouses that have insurance policies on their own lives that benefit the other spouse does not make a difference. "A joint filing does not vest the power to reach a spouse's assets that would have otherwise been insulated." *Wornick v. Gaffney*, Slip Op. No. 07-1657-bk, 2008 WL 4349810, *4. Accordingly, the Debtors argue that the Trustee cannot administer the insurance policies in this case.

In his Reply, the Trustee argues that the Second Stipulation which modifies the First Stipulation constitutes a binding contract even without the Court's approval. Moreover, the Court has already so ordered the First Stipulation under which the Debtors each waived any right

to claim an exemption in the insurance policies and the First Stipulation is still enforceable by the Court.

The Court held a hearing on the Trustee's Motion on November 13, 2008 and requested the parties submit post-hearing memoranda regarding whether a change in law that occurs after a stipulation is entered into affects the validity and enforceability of that stipulation. In its post-hearing memorandum, the Debtors argue that until the Court has so ordered the Second Stipulation the stipulation is not fully enforceable and the Court can rescind, modify or deny so-ordering the stipulation. Therefore, the Debtors request that the Court rescind the Second Stipulation as the Debtors would be prejudiced by the Court's approval. The Trustee argues that the legal support cited by the Debtors is distinguishable and that while changes in law are inevitable, parties who negotiate in good faith based upon the law as it existed at the time should not be denied the benefit of their bargain. Moreover, the Trustee argues that there was no mistake or fraud on either party's behalf when the Second Stipulation was entered that would warrant the rescission of the Second Stipulation.

## DISCUSSION

While there was a change in the interpretation of the Bankruptcy Code as to whether an intended beneficiary's interest in a life insurance policy is property of such beneficiary's bankruptcy estate, the Court must determine whether the stipulation between such debtor-beneficiary and a Chapter 7 Trustee entered into prior to such change in law is enforceable. Accordingly, general principles of New York contract law apply.

'It is well settled that stipulations between parties or their attorneys, reduced to a writing

*or* to an order which has been entered becomes a binding agreement; and that the authority of the court to relieve a party from the scope of a court-approved stipulation is an exercise of discretion which cannot be involved without a showing of good cause therefor, "such as fraud, collusion, mistake, accident, or some other ground of the same nature."' *Hinds v. Gulutz*, 61 Misc.2d 382, 385, 305 N.Y.S.2d 691, 692 (N.Y. Sup. Ct. 1969) (internal citations omitted)(emphasis added). See also, N.Y. C.P.L.R. § 2104; *In re Royster Company*, 132 B.R. 684, 687 (Bankr. S.D.N.Y. 1991)(stating that when parties enter into a stipulation, the agreement is enforceable as a contract and a stipulation and order is a binding agreement between parties which have been so ordered by the presiding court). In this case, there has been no allegation of fraud or collusion by either party in negotiating the First Stipulation or the Second Stipulation. Rather, the Debtors argue that there was a mutual mistake of law.

Courts may decline to enforce a contract predicated on a mutual mistake of law. *Anita Foundations, Inc. et al. v. ILGWU National Retirement Fund*, 902 F.2d 185, 189 (2d Cir. 1990); *Board of Trustees of the Sheet Metal Workers Local Union no. 137 Insurance Annuity and Apprenticeship Training Funds et. al v. Vic Construction Corporation*, 825 F. Supp. 463, 467 (E.D.N.Y. 1993). A mutual mistake of the law requires both parties to be mistaken as to the law and must be viewed in accordance with the law and the circumstances which existed at the time the contract is entered into by the parties. *Hinds v. Gulutz*, 61 Misc.2d at 385, 305 N.Y.S.2d at 693. In this case, there was no mutual mistake of the law at the time the Second Stipulation was entered into by the parties. At the time the stipulation was entered into, several courts had held that the cash surrender value was not exempt in a joint bankruptcy case where one of the debtors is the beneficiary. *In re Ventimiglia*, 362 B.R. 71 (Bankr. E.D.N.Y. 2007); *In re Teufel*, No.

5

02-CV-81S, slip op. (W.D.N.Y. Sept. 24, 2002); *In re Jacobs*, 264 B.R. 274 (Bankr. W.D.N.Y. 2001); cf., *In re McWhorter*, 312 B.R. 695 (Bankr. N.D. Ala. 2004). It was on this basis and a desire to avoid the expenses of litigation that the Debtors agreed to waive their exemption in their insurance policies under the First Stipulation and the Second Stipulation, which was executed almost a year after the First Stipulation, and they turned over a percentage of the cash surrender value of the Insurance Policies to the Trustee. Accordingly, there was no mutual mistake of law at the time the Second Stipulation was entered.

Rather, the Debtors' basis for rescission is that there was a change in law that occurred after the Second Stipulation was entered. Under *Wornick v. Gaffney*, the Court of Appeals for the Second Circuit held, contrary to prior lower court decisions, that any leverable interest in the cash surrender value of an insurance policy belongs to the owner/insured and not to the beneficiary because N.Y. Insurance Law § 3212 protects the cash surrender value from the creditors of the owner/insured. Therefore, the cash surrender value is not subject to administration by a bankruptcy trustee. *Wornick v. Gaffney*, Slip Op. No. 07-1657-bk, 2008 WL 4349810. Accordingly, the Debtors argue that the Trustee cannot administer the cash surrender values of the Insurance Policies for the benefit of the creditors of either Debtor.

While the turnover of the cash surrender value would significantly impact the Debtors financially given the Second Circuit's ruling in *Wornick v. Gaffney*, it is well settled that a subsequent change in law cannot be used to set aside a written agreement. *Anita Foundations, Inc. et al. v. ILGWU National Retirement Fund*, 902 F.2d 185; *Board of Trustees of the Sheet Metal Workers Local Union no. 137 Insurance Annuity and Apprenticeship Training Funds et. al v. Vic Construction Corporation*, 825 F. Supp. 463,467; *Wilson v. New York City Transit*

*Authority*, 115 Misc.2d 1017, 545 N.Y.S.2d 962 (N.Y. City Civ. Ct. 1982), *aff'd*, 124 Misc.2d 839, 480 N.Y.S.2d 298 (N.Y. Sup. Ct. 1984). See also, *Hinds v. Gulutz*, 61 Misc.2d at 385, 305 N.Y.S.2d at 692-93; *Krantz v. University of Kansas*, 271 Kan. 234, 21 P.3d 561 (2001) (discussing cases under New York law holding that a subsequent change in law will not justify rescission of a settlement agreement or contract on the basis of mistake of law). "The uncertainty of a legal position and the desire to avoid the risk of a lawsuit are the impetus for many out-of-court settlements. It is simply inappropriate to equate these settlement agreements with agreements premised upon the misapplication of settled legal principles." *Anita Foundations, Inc. et al. v. ILGWU National Retirement Fund*, 902 F.2d at 190.

In entering into a settlement agreement, parties need to consider the risks and costs of litigation and part of this risk analysis includes the possibility that laws, including the judicial construction of laws, may change. *Board of Trustees of the Sheet Metal Workers Local Union no. 137 Insurance Annuity and Apprenticeship Training Funds et. al v. Vic Construction Corporation*, 825 F. Supp. at 467.

> "If parties can avoid contracts whenever courts clarify or change their interpretation of statutes, thereby altering material assumptions of the parties when accepting a settlement offer, every settlement would be susceptible to rescission due to facts entirely beyond the control of the settling parties. A central purpose of a settlement agreement - to eliminate all such risks while bringing finality to a dispute - would be undermined were courts to rescind agreements under such circumstances."

*Id.*, 825 F. Supp. at 468. Accordingly, there is no basis to rescind the Second Stipulation on the basis of a subsequent change in law.

While the Debtors argue that the Second Stipulation is not enforceable without the Court's authorization, the Court notes that legal authority cited by the Debtors are

distinguishable from the case before the Court.  Those cases simply hold that the court has the ability to enforce a stipulation that has been so ordered by the Court and those cases do not involve a party to a stipulation seeking to rescind such agreement based upon a subsequent change in the interpretation of the law.  Even though the Court has not yet so-ordered the Second Stipulation, it does not change the fact that both the Debtors and counsel for the Trustee executed the Second Stipulation and such stipulation is a binding contract under N.Y. C.P.L.R. § 2104.

Moreover, the Debtors remain bound by the First Stipulation which the Court so-ordered and has not been appealed.  The Debtors have not provided any basis for the Court to rescind the First Stipulation as there was no mutual mistake of law at the time such stipulation was entered into and the Second Circuit's subsequent decision in *Wornick v. Gaffney* does not nullify the validity or enforceability of the First Stipulation for the same reasons it does not allow the Debtors to rescind the Second Stipulation.  After due consideration, the Court notes that if it does not approve the Second Stipulation, the Debtors would be subject to harsh financial and tax consequences of the First Stipulation which the court has already approved and is a final order. The Second Stipulation lessens the consequences of the First Stipulation as the Trustee is willing to accept less than 100% of the cash surrender value in full settlement and satisfaction of the claims of each of the Debtors' bankruptcy estates in and to the Insurance Policies without the necessity of cashing out or canceling the Insurance Policies.  Approval of the Second Stipulation would not result in the creditors being unjustly enriched at the expense of the Debtors as the Debtors had previously agreed to the turnover of a percentage of the cash surrender value of the Insurance Proceeds without having the Insurance Policies cancelled and the Trustee should be

entitled to the benefit of his bargain.

While the Trustee has not set forth how the proposed distribution of the proceeds from the Insurance Policies will be distributed with respect to the creditors of each of the Debtors' bankruptcy estate, the Debtors request that in the event the Court approves the Second Stipulation that the proceeds from the 3 Insurance Policies held by Thomas Napolitano for the benefit of Mary Napolitano, with the maximum loan value of $41,267.95 be available only to Mary Napolitano's creditors.  As there is only one filed proof of claim in the amount of $2,306.64 that is filed against Mary Napolitano's bankruptcy estate, the Debtors argue that any recovery by the Trustee from the Insurance Policies should be limited to $2,306.64 and any surplus arising from the cash surrender value relating to the Insurance Policies under which she is a beneficiary should be returned to her and not be used to satisfy the separate claims filed against Thomas Napolitano's bankruptcy estate.

The manner of how the cash surrender value of the Insurance Proceeds is to be distributed is not now an issue before this Court as it does not affect the Debtors' obligation to turnover the agreed upon cash surrender value of the Insurance Policies pursuant to the Second Stipulation.  However, the Court does note that while 11 U.S.C. § 302 allows spouses to file a bankruptcy petition jointly, it does not automatically consolidate their bankruptcy estates.  11 U.S.C. § 302; *Wornick v. Gaffney*, Slip Op. No. 07-1657-bk, 2008 WL 4349810, * 4 (stating that "the trustee may not reach assets in a joint filing that he could not have reached had the spouses filed separately.")  There has not been any motion filed seeking substantive consolidation of the joint Debtors' bankruptcy estates.  If the Debtors have any objection to the manner in which the funds from the Insurance Policies are to be distributed among the creditors of the bankruptcy

9

estates, the Debtors may raise this issue at any time prior to the case being closed. The Court declines to limit any recovery by the Trustee under the Insurance Policies other than to what was agreed upon under the Second Stipulation at this time.

## CONCLUSION

Based upon the foregoing, the Trustee's motion seeking approval of the Second Stipulation is granted and the Debtors' objection is overruled.

So ordered.

Dated: December 23, 2008
       Central Islip, New York

                                          *s/ Dorothy Eisenberg*
                                          Dorothy Eisenberg
                                          United States Bankruptcy Judge